**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHARYON COSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 10 C 5848 |
| | ) |
| AMERIQUEST MORTGAGE, et al. | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Presently before us are two motions to dismiss filed by the three remaining defendants in

this action: Deutsche Bank National Trust Company ("Deutsche Bank"), American Home

Mortgage Servicing Incorporated ("AHMSI"), and CitiMortgage, Inc. ("CMI") (collectively

"Defendants"). (Dkt. Nos. 87 & 98.) Defendants contend that Plaintiff Sharyon Cosey's four-

count complaint must be dismissed for a variety of jurisdictional and procedural reasons. As set

forth below, we grant the motions.

**BACKGROUND**

According to the complaint, Cosey bought her home in 1985 and refinanced with Argent

Mortgage Company in 2003. (Compl. ¶¶ 11, 15.) In 2004, Cosey took out an equity home loan

with Argent, which at some point transferred ownership of the loan to Ameriquest Mortgage

Company. (*Id.* ¶¶ 17–20.) After losing her job, Cosey fell behind on her mortgage payments in

2006. (*Id.* ¶ 21.) About that same time, Deutsche Bank purchased ownership of Cosey's loan

from Ameriquest and, on March 28, 2006, initiated a foreclosure action in the Circuit Court of

Cook County. (*Id.* ¶ 22; *see also* Dkt. No. 100, Defs.' Exs. C (Assignment of Mortgage) & D

(Complaint to Foreclose Mortgage).) A final judgment of foreclosure followed in 2007. (Compl. ¶ 23; *see also* Dkt. No. 100, Defs.' Ex. E (Judgment of Foreclosure and Sale).)

Cosey continued to fight the impending foreclosure, however, both with and without counsel. (Compl. ¶¶ 28–30.) For example, Cosey informed the Circuit Court that she never had a loan with Ameriquest. (*Id.* ¶ 28.) Moreover, Cosey "protested at the time of the confirmation and order, that any loan documents presented in foreclosure were fraudulent and disingenuous." (*Id.* ¶ 29.) Nonetheless, the judicial sale proceeded on June 19, 2009. (*Id.* ¶ 29.)

On June 29, 2009, Cosey reviewed the Circuit Court file and noticed that "the signatures, initials and dates on the mortgage documents had been forged." (*Id.* ¶ 30.) She then hired a lawyer to file a petition with the Circuit Court and present this new information before the proceedings terminated. (*Id.* ¶¶ 31–32.) Her lawyer neglected to do so, however, and her own *pro se* petition was denied as untimely. (*Id.* ¶¶ 32, 34.) Accordingly, the August 20, 2009 order finalizing the foreclosure and sale was left unchallenged. (*Id.* ¶ 32; *see* also Dkt. No. 100, Defs.' Ex. F (Order Approving Foreclosure Report of Sale and Distribution).) Cosey filed this lawsuit on September 15, 2010, about a year after the foreclosure became final.

## STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(1) and (b)(6) are meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949–50 (2009) (extending *Twombly* from antitrust to litigation generally and stating

that a court's determination "whether a complaint states a plausible claim for relief will . . . be a context-specific task"); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776–77 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In evaluating a motion to dismiss, we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.* at 1949–50.

Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Jurisdiction is the "power to decide" and must be conferred upon the federal court. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a Rule 12(b)(1) motion, we may look beyond the complaint to other evidence submitted by the parties to determine whether subject matter jurisdiction exists. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). A plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. U.S. Dep't Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

## ANALYSIS

In their motions, Defendants argue that we lack subject matter jurisdiction over Cosey's claims pursuant to the *Rooker-Feldman* doctrine. Defendants also contend, *inter alia*, that certain statutes of limitation bar Cosey's suit. (*See, e.g.*, CMI's Mem. at 8–14; Deutsche Bank & AHMSI Mem. at 15.) We begin with the *Rooker-Feldman* issue, however, as it is jurisdictional.

I.      *Rooker-Feldman*

"Simply put, the *Rooker-Feldman* doctrine 'precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment.'" *Taylor v. Fed'l Nat'l Mortgage Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004) (quoting *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002)); *see Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011).  This narrow doctrine deprives us of jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22 (2005); *see Byrd v. Homecomings Fin. Network*, 407 F. Supp. 2d 937, 942 (N.D. Ill. 2005).

In addition to prohibiting direct review of state-court rulings by federal district courts, the *Rooker-Feldman* doctrine bars claims that are "inextricably intertwined" with a state-court judgment, "such that success in federal court would require overturning the state court decision." *Epps v. Creditnet, Inc.*, 320 F.3d 756, 759 (7th Cir. 2003); *Taylor*, 374 F.3d at 532–33; *Brokaw*, 305 F.3d at 664.  In examining whether a federal claim is "inextricably intertwined," the crucial inquiry "is whether 'the district court is in essence being called upon to review the state-court decision.'"  *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1996) (quoting *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 483–484 n.16, 103 S. Ct. 1303, 1316 n.16 (1983)); *Taylor*, 374 F.3d at 533.  To that end, we consider whether the state-court judgment caused the injury of

which the plaintiff complains, "or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Taylor*, 374 F.3d at 533; *see Crawford*, 647 F.3d at 646; *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999).

      If the federal claim is in fact inextricably intertwined with a state-court decision, we must then ask whether the plaintiff had a reasonable opportunity to raise the current claims in the earlier forum. *Taylor*, 374 F.3d at 533; *Brokaw*, 305 F.3d at 668; *Long*, 182 F.3d at 557–58. Indeed, "if the plaintiff could have raised the issue in state court proceedings, the claim is barred by the *Rooker-Feldman* doctrine." *Taylor*, 374 F.3d at 533; *see Long*, 182 F.3d at 558; *Byrd*, 407 F. Supp. 2d at 942. This "reasonable opportunity" exception "requires that the plaintiff point to some action or procedure of the state court—independent of the actions of the opposing party—that prevent[ed] it from presenting its claims to the state court." *Bryan v. Belvidere Nat'l Bank*, No. 04 C 50009, 2004 WL 1345096, at *2 (N.D. Ill. June 14, 2004) (citing *Long*, 182 F.3d at 558); *Taylor*, 374 F.3d at 535–35; *Stone v. Washington Mutual Bank*, No. 10 C 6410, 2011 WL 3678838, at *5–6 (N.D. Ill. Aug. 19, 2011). Thus, a plaintiff must claim that she was precluded from arguing the present position by something more than her own neglectful waiver or the antics of her opponent. *See Long*, 182 F.3d at 558–59 (finding that plaintiff could not "rely on the deception of her opponents" to show her lack of reasonable opportunity); *Byrd,* 407 F. Supp. 2d at 943 (concluding that plaintiff had been afforded a reasonable opportunity because the state court had jurisdiction to hear her Truth in Lending Act claim); *Bryan*, 2004 WL 1345096, at *2 (explaining that plaintiffs' waiver of the chance to challenge the foreclosure had no effect on *Rooker-Feldman*'s applicability). With these principles in mind, we turn to evaluate whether *Rooker-Feldman* precludes any of Cosey's claims against Defendants.

### A.    TILA Claims

We begin with Counts I, II and IV, each of which allege some violation of the Truth I Lending Act ("TILA"). (Compl. ¶¶ 38–44, 47–48, 53, 55–56, 59–60, 62.)  In Count I, Cosey alleges that Defendants failed to provide her and her spouse with conspicuous, accurate disclosure statements as required by TILA.  Cosey asks us to "rescind the loan at 454 East Bowen Ave." based on the disclosure violations. (*Id.* ¶ 44.)  Count II includes general allegations that the originating lender never intended to retain ownership of the loan but planned to assign the interest to others. (*Id.* ¶¶ 46–47.)  Cosey contends that Defendants "did not have the authority to foreclose in case of default" because neither she, nor her spouse, signed a promissory note that permitted such transfer of interest by the lender to third parties. (*Id.* ¶ 48.) She then seeks damages from Defendants, presumably for the unauthorized foreclosure.  Count IV alleges that Defendants violated TILA's rescission provisions by failing to honor Cosey's attempts to rescind the mortgage.  Specifically, Cosey explains that none of the remaining Defendants responded to her two August 2010 letters requesting rescission. (*Id.* ¶¶ 52–53, 55–56, 58(a), (b).)  Cosey also seeks damages in Count IV, as well as rescission of the new owner's interest in the property. (*Id.* ¶¶ 62–63.)

We have little difficulty finding that the *Rooker-Feldman* doctrine bars one claim within Count II of Cosey's complaint, which seeks to hold Ameriquest's assignees liable under TILA. Cosey alleges that Defendants (she does not specify which Defendants) failed to provide disclosures and lacked the authority to foreclose on her home. (*Id.* ¶ 48.)  As we have said previously, a state court's order finalizing a foreclosure impliedly—if not expressly—holds that the foreclosing bank is the legitimate holder of a valid mortgage. *Thompson v. Ameriquest*

-6-

*Mortgage Co.*, No. 03 C 3256, 2003 WL 22012207, at *3 (N.D. Ill. Aug. 21, 2003) ("Implicit in the Circuit Court Judgment was that court's determination that the Mortgage was valid."); *see also Jones v. US Bank Nat'l Ass'n*, No. 10 C 0008, 2011 WL 882758, at *4 (N.D. Ill. Mar. 11, 2011) (commenting that the problem with plaintiff's theory was that the state court already found the debt lawful by granting foreclosure); *Spencer v. Ameriquest Mortgage Co.*, No. 05 C 356, 2006 WL 1302413, at *4 (N.D. Ill. May 4, 2006) ("In entering the judgment of foreclosure, the Circuit Court . . . necessarily rejected [plaintiff's] claims" that the mortgage was fraudulent and foreclosure improper). Cosey's claim that Defendants had no right to initiate foreclosure proceedings clearly attacks the state court judgment allowing the foreclosure. Put another way, Cosey would not assert this particular claim but for the foreclosure itself. *See, e.g.*, *Holt v. Lake Cty. Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005) (noting that "absent the state court's judgment," plaintiff would have no injury); *Ritter*, 992 F.2d at 754 (same); *Flowers v. Burton Wells, Ltd.*, No. 01 C 9306, 2002 WL 31307421, at *3 (N.D. Ill. Oct. 9, 2002) (explaining that if the plaintiff "had prevailed in state court and never become subject to eviction, he would not have been injured").

Moreover, Cosey had ample opportunity to contest Defendants' authority to seek foreclosure in the state court proceedings. While she contends that her lawyer failed to satisfy his obligations after the judgment had been entered, she has not identified "any state laws, state court procedures or other impediments" that prevented her from bringing this claim in state court. *Taylor*, 374 F.3d at 535; *see Seibring v. GMAC Mortgage Corp.*, No. 06 C 91277, 2008 WL 183283, at *1 (Bankr. C. D. Ill. Jan. 22, 2008) (finding "no authority which recognizes that the alleged lack of effective counsel is a basis to avoid the application of the *Rooker-Feldman*

doctrine"). To the contrary, Cosey states that she vigorously fought the foreclosure. (Compl. ¶¶ 28–29.) Under these circumstances, we hold that Cosey's claim that Defendants had no authority to foreclose on her home is barred by *Rooker-Feldman*.

Nonetheless, we cannot conclude that *Rooker-Feldman* precludes Cosey's remaining TILA claims. In Counts I and II, Cosey alleges that Defendants failed to provide accurate disclosures at closing as required by TILA. (Compl. ¶¶ 37–43, 48.) It does not appear that Cosey raised TILA arguments as a defense in the foreclosure action. Regardless of their merits, these claims stem from Defendants' conduct at the inception of the loan or otherwise prior to the entry of the state court judgment. As the Seventh Circuit explained in a relatively recent unpublished opinion, "[b]ecause the [plaintiff's] alleged injury was complete before the state court litigation even commenced, *Rooker-Feldman* is not at play." *Dye v. Ameriquest Mortgage Co.*, 289 Fed. Appx. 941, 943–44 (7th Cir. 2008) (finding district court's application of *Rooker-Feldman* too broad where plaintiffs alleged that "defendants injured them . . . at the time of the closing of their mortgage"); *see Exxon Mobil Corp.*, 544 U.S. at 285, 125 S. Ct. at 1521–22; *Long*, 182 F.3d at 556. Indeed, we could find in Cosey's favor on the TILA disclosure claims without mentioning, let alone reviewing, the foreclosure judgment.[1] *Crawford*, 647 F.3d at 647 (affirming district court's decision that *Rooker-Feldman* did not bar claims independent of a foreclosure action where "relief could be granted without necessarily impugning the state court's

---

[1] The parties might dispute the availability of rescission as a remedy under these circumstances—particularly given that a foreclosure sale has already occurred. There is some authority providing that rescission remains appropriate even after a state court foreclosure judgment. *See Lippner v. Deutsche Bank Nat'l Trust Co.*, 544 F. Supp. 2d 695, 702–03 (N. D. Ill. 2008). Regardless, Cosey also seeks damages under TILA, which allows statutory and actual damages for certain violations. (Compl. ¶¶ 44, 48.)

judgment").

We additionally could remedy Defendants' alleged violations of TILA's rescission provisions without contradicting the state court's rulings. Cosey contends in Count IV that Defendants failed to respond to the rescission notices she sent them in August of 2010. (Compl. ¶¶ 58(a)–(b).) Again, merits aside, this claim represents an independent ground for relief, wholly distinct from the injury caused by the foreclosure itself. *Crawford*, 647 F.3d at 647. Even if the state court proceedings had not resulted in foreclosure, Cosey could pursue such a claim. Accordingly, *Rooker-Feldman* does not deprive us of jurisdiction over Count IV.

### B. State Claim

We turn next to consider Count III, where Cosey asserts that Deutsche Bank "had no right to foreclose . . . since they at no time owned the [m]ortgage." (Compl. ¶ 50.) As discussed earlier with respect to Count II, *Rooker-Feldman* plainly bars any claim that Defendants illegally foreclosed on the property. (*See id.* ¶ 50(c).)

Cosey also alleges in Count III that Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("Act") "through their use of concealment, deceit and omission regarding the loan." (*Id.* ¶ 49.) To the extent that Cosey claims Defendants violated the Act by improperly seeking foreclosure, *Rooker-Feldman* steps in. We have jurisdiction, however, over claims under the Act for conduct independent of the foreclosure action. Although the conclusory nature of Count III renders it difficult to discern the scope of Cosey's claim, we cannot conclude that we lack jurisdiction.

### II. Rule 12(b)(6) Issues

Having confirmed our jurisdiction over several of Cosey's claims, we turn to address

Defendants' argument that such claims must be dismissed pursuant to applicable statutes of limitations or for failure to state a claim.

## A.     TILA Disclosure Claims: Counts I and II

Cosey's claims for damages based on Defendants' alleged failure to provide required TILA disclosures are subject to a one-year statute of limitations. 15 U.S.C. § 1640(e); *Fernandes v. JPMorgan Chase Bank, N.A.*, — F. Supp. 2d —, No. 11 C 652, 2011 WL 4888785, at *7 (N.D. Ill. Oct. 13, 2011); *Arriaga v. Wells Fargo Bank, N.A.*, No. 09 C 2115, 2011 WL 4738522, at *3 (N.D. Ill. Sept. 30, 2011); *Spann v. Cmty. Bank of N. Va.*, No. 03 C 7022, 2004 WL 691785, at *8 (N.D. Ill. Mar. 30, 2004). The limitations period begins to run with the "occurrence of the violation," 15 U.S.C. § 1640(e), meaning "the date upon which the loan instrument is signed," *Arriaga*, 2011 WL 4738522, at *3 (internal citation omitted). *See also In re Hunter*, 400 B.R. 651, 657 (Bankr. N.D. Ill. 2009) ("[T]he date that the violation occurred is the date that the credit transaction was consummated, i.e., the date that the loan closed."); *Schmit v. Bank United FSB*, No. 08 C 4575, 2009 WL 320489, at *1 (N.D. Ill. Feb. 6, 2009) (same).

According to Cosey's complaint, the mortgage documents disputed here were signed and the loan consummated in December 2004. (*See* Compl. ¶¶ 18, 34.) Cosey did not file this lawsuit until September 2010—nearly six years after the closing and far outside the limitations period. Cosey has not articulated any persuasive reason why tolling might apply, and we detect none in the complaint.[2] Accordingly, Cosey's claims under TILA for damages due to

---

[2] To the extent that Cosey might contend that fraudulent concealment should toll the running of the one-year statute of limitations period, she has failed to adequately plead such a claim. *See, e.g.*, *Arriaga*, 2011 WL 4738522, at *3–4 (explaining that the period for TILA damages claims may be tolled under a fraudulent concealment theory, which must be pled with specificity pursuant to Rule 9(b)); *Spann*, 2004 WL 691785, at *7–8 (same).

Defendants' alleged disclosure violations are dismissed as untimely.

**B.      TILA Rescission Claim: Counts I and IV**

Generally speaking, TILA allows a borrower with second thoughts to rescind a loan within three business days from either the closing of the transaction or the delivery of required disclosure notices to the borrower.  15 U.S.C. 1635(a); *Pendolino v. BAC Home Loans Servicing, LP*, No. 10 C 5916, 2011 WL 3022265, at *3 (N.D. Ill. July 22, 2011); *Hunter*, 400 B.R. at 657; *Fairbanks Capital Corp. v. Jenkins*, 225 F. Supp. 2d 910, 913 (N.D. Ill. 2002).  If the creditor fails to provide accurate disclosures to the borrower, the three-day period extends to three years from the date of the loan's consummation.  15 U.S.C. § 1635(f); *Pendolino*, 2011 WL 3022265, at *3; *Hunter*, 400 B.R. at 657; *Fairbanks Capital Corp.*, 225 F. Supp. 2d at 913.  This three-year period is not a statute of limitations but a statute of repose, such that the very right to pursue rescission absolutely extinguishes at the end of the period.  *Beach v. Ocwen Fed'l Bank*, 523 U.S. 410, 412, 417–19, 118 S. Ct. 1408, 1409, 1412–13 (1998); *Hunter*, 400 B.R. at 658; *Spann*, 2004 WL 691785, at *3–4.  In other words, the three-year period is not subject to tolling doctrines but marks a final, unwavering deadline for rescission claims.  *Beach*, 523 U.S. at 417–19, 118 S. Ct. at 1412–13; *Spann*, 2004 WL 691785, at *3–4.

Here, Cosey contends that Defendants failed to provide adequate TILA disclosures. (Compl. ¶¶ 38–42, 48.)  Accepting these allegations as true, as we must, we consider whether Cosey sought rescission within the three-year period provided by 15 U.S.C. § 1635(f).  Although Cosey suggests that the period was not triggered until June 2010, her argument is misplaced. (Resp. at 6.)  TILA explicitly states that the three-year period begins on "the date of consummation of the transaction," even where no disclosures have been made.  15 U.S.C.

-11-

§ 1635(f).  The United States Supreme Court has held that the running of the period cannot be

tolled because "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year

period."  *Beach*, 523 U.S. at 412, 118 S. Ct. at 1409; *Pendolino*, 2011 WL 3022265, at *3;

*Spann*, 2004 WL 691785, at *3–4; *see also Stewart v. BAC Home Loans Servicing, LP*, No. 10 C

2033, 2011 WL 862938, at *6 (N.D. Ill. Mar. 10, 2011) ("[T]he last day a borrower may send

notice to rescind is the three-year anniversary of the transaction.").  Pursuant to these authorities,

Cosey had until approximately December 29, 2007 to request rescission.  (*See* Compl. ¶ 18

(alleging that she signed the loan documents on December 29, 2004).)  Yet, according to the

complaint, she failed to do so until August 2010.  (Compl. ¶¶ 52–53, 55–56, 58(a), (b).)  As

Cosey's right to rescind expired in 2007, her claim for rescission cannot proceed.

## C.      TILA Failure to Honor Claim: Count IV

Cosey's remaining TILA claim alleges that Defendants failed to honor her August 2010

rescission requests.  A failure to honor claim is subject to the same one-year statute of limitations

as the disclosure claims discussed earlier.  *See* 15 U.S.C. § 1640(e).  Although Defendants do not

squarely address this claim, which is distinct from the rescission claim, we conclude that it is

timely.  The limitations period on a failure to honor claim is triggered after the creditor rejects or

ignores a borrower's rescission notice.[3]  Thus, Cosey's claim accrued in August 2010 when

Defendants allegedly failed to respond to her letters.  (Compl. ¶ 58(a), (b) (alleging that she sent

---

[3] More specifically, TILA provides that the creditor (or other potentially liable entity) has twenty days to respond to a rescission notice. 15 U.S.C. § 1635(b).  If the creditor fails to do so, the "borrower then has one year from the end of that 20-day period to bring a suit to enforce the rescission."  *Stewart*, 2011 WL 862938, at *6; *Obi v. Chase Home Fin., LLC*, No. 10 C 5747, 2011 WL 529481, at *3 (N.D. Ill. Feb. 8, 2011); *Hunter*, 400 B.R. at 658.

letters on August 3 and 4, 2010).) Cosey filed this action a few weeks later and well within the one-year limitations period.

Nonetheless, Cosey's failure to honor allegations must be dismissed for failure to state a claim. As discussed earlier, Cosey's right to rescind the loan expired in 2007. Having held that Cosey's notices of rescission were invalid, it would defy common sense to hold Defendants liable for ignoring them. We conclude, as have other courts, that "a borrower may not collect damages for a lender's refusal to respect a notice claiming a right already extinguished at the time notice is given." *Sall v. Bounassissi*, No. 10 C 2245, 2011 WL 2791254, at *8 (D. Md. July 13, 2011); *Belini v. Washington Mutual Bank, FA*, 412 F.3d 17, 25 (1st Cir. 2005) (noting that "where the debtor's notice of rescission is invalid . . . then no damages can be assessed against the creditor for failing to respond to the notice"); *Mijo v. Avco Fin. Servs. of Haw., Inc.*, No. 90 C 16688, 1991 WL 126660, at *1 (9th Cir. July 1, 1991) (affirming dismissal of damages claim for failure to honor where plaintiffs had no right to rescind); *Lynch v. RKS Mortgage Inc.*, 588 F. Supp. 2d 1254, 1261 (E.D. Cal. 2008) (concluding that the statutory requirement to respond to a notice "presupposes a valid right to rescission for which a timely reply was owed"). Because Cosey's rescission notices were untimely and thus plainly ineffectual, TILA did not impose any obligation on Defendants to respond. We do not intend to embolden creditors to disregard rescission notices (even questionable notices) from consumers; any failure to promptly respond exposes a creditor to litigation and potential liability. But under the present circumstances, Defendants' motions must be granted.

### D.     State Claim: Count III

Finally, we turn to Cosey's claim under the Act. Even assuming that this claim is timely-

-13-

filed—an issue we need not resolve—it cannot stand.  As Defendants point out, Cosey's

allegations in Count III fail to satisfy the heightened pleading standard applicable for claims

under the Act.  *See Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593

(Ill. 1996) ("[A] complaint alleging a violation of consumer fraud must be pled with the same

particularity and specificity as that required under common law fraud."); *Pirelli Armstrong Tire*

*Corp. v. Walgreen Co.*, No. 09 C 2046, 2009 WL 2777995, at *4 (N.D. Ill. Aug. 31, 2009) ("A

complaint alleging violation of the [Act] must be pleaded with the same particularity as common

law fraud and must meet the heightened pleading standard of Federal Rule of Civil Procedure

9(b).").  Rather than providing necessary details (e.g., the who, what, when, where and how),

Cosey alleges in conclusory fashion that Defendants violated the Act "through their use of

concealment, deceit, and omission regarding the loan."  (Compl. ¶ 49.)  This bare allegation is

woefully deficient and simply does not meet Rule 9(b)'s requirements.  We therefore dismiss

Count III.

### CONCLUSION

For the reasons set forth above, we grant Defendants' motions.[4]  This case is terminated.

It is so ordered.

Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: November 18, 2011

---

[4] In light of the above rulings, we need not address the other arguments raised by
Defendants, including, for example, res judicata and collateral estoppel.

-14-